IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————————

No. 22-5

———————————————

UNITED STATES OF AMERICA,

*Appellee*,

v.

RICHARD TIPTON II,

*Appellant*.

———————————————

Appeal from the United States District Court
for the Eastern District of Virginia
at Richmond
*The Honorable David J. Novak, District Judge*

———————————————

BRIEF OF THE UNITED STATES

———————————————

Jessica D. Aber
United States Attorney

Richard D. Cooke
Joseph Attias
Assistant United States Attorneys
919 East Main Street, Suite 1900
Richmond, Virginia 23219
(804) 819-5400

*Attorneys for the United States of America*

# Table of Contents

Page

Table of Authorities ........................................................................................ iii

Introduction ....................................................................................................1

Issues Presented ............................................................................................3

Statement of the Case......................................................................................3

      A.     Tipton is indicted, convicted, and sentenced ......................................3

      B.     Tipton files a motion to vacate his § 924(c) convictions. ....................8

      C.     The district court denies Tipton's motion. .........................................10

Summary of Argument .................................................................................13

Argument.......................................................................................................16

I.     Tipton's challenge to his § 924(c) convictions is procedurally
     defaulted........................................................................................................16

      A.     Narcotics distribution conspiracy under § 846 is a drug
             trafficking crime........................................................................................18

      B.     CCE murder under § 848(e)(1)(A) is a drug trafficking crime...........21

      C.     CCE murder under § 848(e)(1)(A) is a crime of violence. .................23

      D.     VICAR murder is a crime of violence. ...............................................34

      E.     VICAR maiming is a crime of violence...............................................40

      F.     Tipton cannot demonstrate prejudice. .................................................42

Conclusion ....................................................................................................49

Statement Regarding Oral Argument ...........................................................50

Certificate of Compliance ................................................................................50

**Table of Authorities**

**Page**

**Cases**

*Apprendi v. New Jersey*, 530 U.S. 466 (2000)........................................................31

*Borden v. United States*, 141 S. Ct. 1817 (2021)............................................... *passim*

*Bousley v. United States*, 523 U.S. 614 (1998).....................................................16

*Brecht v. Abrahamson*, 507 U.S. 619 (1993)........................................................39

*Burrage v. United States*, 571 U.S. 204 (2014) ....................................................31

*Gatewood v. United States*, 979 F.3d 391 (6th Cir. 2020).....................................18

*Granda v. United States*, 990 F.3d 1272 (11th Cir. 2021).....................................18

*Greer v. United States*, 141 S. Ct. 2090 (2021) ....................................................39

*Hedgpeth v. Pulido*, 555 U.S. 57 (2008)................................................................40

*In re Hall*, 979 F.3d 339 (5th Cir. 2020)...............................................................31

*In re Irby*, 858 F.3d 231 (4th Cir. 2017) ......................................................... 23, 32

*Johnson v. United States*, 559 U.S. 133 (2010) .....................................................23

*Jones v. Hendrix*, —S. Ct.—, 2023 WL 4110233 (U.S. June 22, 2023).................16

*Lanzetta v. New Jersey*, 306 U.S. 451 (1939).......................................................18

*Marlowe v. Warden, FCI Hazelton*, 6 F.4th 562 (4th Cir. 2021) ...........................16

*Mathis v. United States*, 136 S. Ct. 2243 (2016) ...................................................31

*Ring v. Arizona*, 536 U.S. 584 (2002)...................................................................31

*Rosemond v. United States*, 572 U.S. 65 (2014).....................................................28

*Said v. United States*, 2021 WL 3037412 (E.D. Va. July 19, 2021) .......................41

*Schad v. Arizona*, 501 U.S. 624 (1991) .................................................................33

*Stokeling v. United States*, 139 S. Ct. 544 (2019)..................................................23

*Thompson v. United States*, 924 F.3d 1153 (11th Cir. 2019) .................................29

*United States v. Adkins*, 937 F.2d 947 (4th Cir. 1991) ......................... 20-21, 34, 36

*United States v. Ali*, 991 F.3d 561 (4th Cir. 2021) ......................................... *passim*

*United States v. Allred*, 942 F.3d 641 (4th Cir. 2019) ....................................... 23, 38

*United States v. Alvarez*, 266 F.3d 587 (6th Cir. 2001)..................................................25

*United States v. Baez-Martinez*, 950 F.3d 119 (1st Cir. 2020)...............................29

*United States v. Banks*, 29 F.4th 168 (4th Cir. 2022) ................................................39

*United States v. Battle*, 927 F.3d 160 (4th Cir. 2019) ....................................... 23, 38

*United States v. Begay*, 33 F.4th 1081 (9th Cir. 2022)...........................................29

*United States v. Boyd*, 55 F.4th 272 (4th Cir. 2022)..................................................46

*United States v. Bryant*, 949 F.3d 168 (4th Cir. 2020) ...........................................23

*United States v. Cannon*, 987 F.3d 924 (11th Cir. 2021) ................................. 18-19

*United States v. Capers*, 20 F.4th 105 (2d Cir. 2021) ............................................44

*United States v. Carthorne*, 726 F.3d 503 (4th Cir. 2013) ....................................21

*United States v. Cotton*, 535 U.S. 625 (2002) .........................................................39

*United States v. Crawley*, 2 F.4th 257 (4th Cir. 2021) ...........................................42

*United States v. Davis*, 139 S. Ct. 2319 (2019) .................................................. *passim*

*United States v. Ebert*, 61 F.4th 394 (4th Cir. 2023)...............................................46

*United States v. Eldridge*, 2 F.4th 27 (2d Cir. 2021) ........................................ 18-19

*United States v. Fiel*, 35 F.3d 997 (4th Cir. 1994).....................................................35

*United States v. Fugit*, 703 F.3d 248 (4th Cir. 2012) ..............................................16

*United States v. Green*, 67 F.4th 657 (4th Cir. 2023)....................................... 17, 39

*United States v. Hager*, 721 F.3d 167 (4th Cir. 2013)..............................................22

*United States v. Hansen*, —S. Ct.—, 2023 WL 4138994 (U.S. June 23, 2023)......................................................................................................28

*United States v. Hare*, 820 F.3d 93 (4th Cir. 2016)............................. 12, 18-19, 42

*United States v. Harriss*, 347 U.S. 612 (1954) ........................................................17

*United States v. Harrison*, 54 F.4th 884 (6th Cir. 2022) ................................. 29-30

*United States v. Hastings*, 134 F.3d 235 (4th Cir. 1998)......................................40

*United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003) ...........................................31

*United States v. Hopkins*, 310 F.3d 145 (4th Cir. 2002).......................................12

*United States v. Jackson*, 32 F.4th 278 (4th Cir. 2022) .................................. *passim*

*United States v. Jefferson*, 674 F.3d 332 (4th Cir. 2012) .......................................40

*United States v. Jones*, 935 F.3d 266 (5th Cir. 2019) ...............................................44

*United States v. Keene*, 955 F.3d 391 (4th Cir. 2020) ................................... 32, 35

*United States v. Manley*, 52 F.4th 143 (4th Cir. 2022) .................................... *passim*

*United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019) .................................... 23, 32

*United States v. McKinney*, 60 F.4th 188 (4th Cir. 2023) ......................................17

*United States v. Reavis*, 48 F.3d 763 (4th Cir. 1995) ...............................................50

*United States v. Robinson*, 627 F.3d 941 (4th Cir. 2010)........................................40

*United States v. Roof*, 10 F.4th 314 (4th Cir. 2021) ................................. 22, 27, 35

*United States v. Rumley*, 952 F.3d 538 (4th Cir. 2020) .................................. 23, 38

*United States v. Runyon*, 994 F.3d 192 (4th Cir. 2021).........................................28

*United States v. Said*, 26 F.4th 653 (4th Cir. 2022)........................................ *passim*

*United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001) .........................................16

*United States v. Savoires*, 430 F.3d 376 (6th Cir. 2005) .................................. 41, 43

*United States v. Simms*, 914 F.3d 229 (4th Cir. 2019)...................................... 18-19

*United States v. Smith*, 723 F.3d 510 (4th Cir. 2013)...................................... 39, 52

*United States v. Stevens*, —F.4th —, No. 21-2044, 2023 WL 3940121,
    (3d Cir. June 12, 2023) ....................................................................................31

*United States v. Stitt*, 552 F.3d 345 (4th Cir. 2008)..............................................25

*United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996)...................................... *passim*

*United States v. Vargas-Soto*, 35 F.4th 979 (5th Cir. 2022)..................................17

*United States v. Zelaya*, 908 F.3d 920 (4th Cir. 2018) .................................... 35-36

**Statutes**

18 U.S.C. § 2.................................................................................................. 3-4

18 U.S.C. § 924(c)(2)............................................................................... *passim*

18 U.S.C. § 924(c)(3)(A) ......................................................................... *passim*

18 U.S.C. § 1959................................................................................ 4-6, 32, 36

18 U.S.C. § 1959(a)(1)........................................................................ 1, 12, 31, 34

21 U.S.C. § 801 ................................................................................ 10, 17, 19-20

21 U.S.C. § 846 ...................................................................... *passim*

21 U.S.C. § 848(e)(1)(A) ...................................................... *passim*

21 U.S.C. § 848(n)(1)(D) ..............................................................25

28 U.S.C. § 2255 .................................................................. *passim*

28 U.S.C. § 2255(h)(2)............................................................ 38, 40

**Introduction**

In 1993, a jury convicted the defendant, Richard Tipton II, for his role in a drug organization that was responsible for at least ten murders and additional maimings. Among other things, the jury found Tipton responsible for six murders—the killings of Douglas Talley, Dorothy Mae Armstrong, Bobby Long, Anthony Carter, Curtis Thorne, and Linwood Chiles—and convicted him of six counts of capital murder in furtherance of a criminal enterprise, in violation of 21 U.S.C. § 848(e)(1)(A) ("CCE murder"); six counts of committing murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(1) ("VICAR murder"); two count of maiming in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(2) ("VICAR maiming"); and one count of conspiring to distribute narcotics, in violation of 21 U.S.C. § 846. The jury also convicted Tipton of two counts of using a firearm in relation to the narcotics conspiracy, five of the charged CCE murders, and all the VICAR murders, in violation of 18 U.S.C. § 924(c). The jury sentenced Tipton to death on three of the six CCE murders as well as to multiple terms of life imprisonment.

After receiving authorization by a divided vote to file a successive petition under 28 U.S.C. § 2255, Tipton moved to vacate his firearm convictions (Counts 20 and 26), arguing that they were invalid after *United States v. Davis*, 139 S. Ct. 2319 (2019), and *Borden v. United States*, 141 S. Ct. 1817 (2021).

The district court denied relief, explaining that Tipton's § 924(c) convictions relied on a drug conspiracy predicate under § 846 and CCE murder predicates, both of which remain valid "drug-trafficking crimes" under 18 U.S.C. § 924(c)(2). Additionally, the court held that § 848(e)(1)(A) is a crime of violence because it requires—in every instance—proof of an intentional murder.

Finally, the district court concluded that even if some predicate offenses were invalid after *Davis* or *Borden*, Tipton failed to demonstrate any prejudice. Applying *United States v. Said*, 26 F.4th 653 (4th Cir. 2022), the district court explained that Tipton had to show more than a reasonable possibility that the jury *only* convicted him in reliance on the allegedly invalid predicates. As this Court has explained, on collateral review, when both valid and invalid predicates exist for a § 924(c) conviction, "ambiguity" about which predicate the jury relied on "is insufficient," and "the defendant 'must show not only that he *could* have been convicted under" the invalid predicate, "but also that he *was not* convicted under the" valid predicate. *Said*, 26 F.4th at 661 (citations omitted). But, the court explained, Tipton had barely attempted such a showing and "[c]ommon sense dictates that the jury had at least one of these valid predicates in mind when it convicted Defendant on Count Twenty and Twenty-Six."

This commonsense conclusion flows from the most salient facts of this case. Tipton was convicted of every offense underlying his two § 924(c) convictions,

including the narcotics conspiracy, CCE murders, and VICAR murders. Each CCE and VICAR murder involved a victim who was shot with a firearm, and the statutes themselves require a nexus between the murders and either drug trafficking or racketeering activity. In turn, the narcotics conspiracy relied on these same murders. Under *Said*, Tipton cannot meet his burden of showing that the jury would not have convicted him of the § 924(c) counts relying on the still valid drug-trafficking predicates. So too regarding the VICAR murder predicates.

Tipton disagrees, and now appeals. As explained below, this Court should affirm.

## Issues Presented

1. Did the district court correctly conclude that Tipton's § 924(c) convictions rely on valid drug trafficking crimes and crimes of violence?

2. Did the district court correctly conclude that even if some of Tipton's predicate offenses were invalid, he could still not meet his burden of demonstrating prejudice?

## Statement of the Case

### A. Tipton is indicted, convicted, and sentenced

On July 20, 1992, Tipton, along with six others, was charged in a 33-count indictment with the following offenses:

| Count | Offense | Statutory Provision |
|---|---|---|
| Count 1 | Conspiracy to possess with intent to distribute and to distribute 50 grams or more of cocaine base | 21 U.S.C. § 846 |
| Count 2 | Engaging in a continuing criminal enterprise | 21 U.S.C. § 848(a) |
| Counts 3, 5, 11, 17-19, 24, 25 | Capital murder in furtherance of a criminal enterprise | 21 U.S.C. § 848(e) and 18 U.S.C. § 2 |
| Counts 4, 7, 13-14, 16, 21-23, 27, 28-30 | Commission of violent crimes in aid of racketeering activity | 18 U.S.C. § 1959 |
| Counts 12, 15, 20, 26 | Use of a firearm in relation to a crime of violence or a drug-trafficking offense | 18 U.S.C. § 924(c) |
| Counts 32-33 | Possession with intent to distribute cocaine base | 21 U.S.C. § 841(a)(1) |

Each firearm offense charged in Counts 20 and 26—the only convictions at issue in this appeal—relied on multiple underlying predicates.

Count 20 charged Tipton with using, or aiding and abetting the use, of a firearm on or about February 1, 1992, during and in relation to the following crimes of violence or drug trafficking crimes:

| Count | Predicate Offense |
|---|---|
| Count 1 | 21 U.S.C. § 846 |
| Count 17 | 21 U.S.C. § 848(e)(1)(A) (CCE murder of Bobby Long) |
| Count 18 | 21 U.S.C. § 848(e)(1)(A) (CCE murder of Anthony Carter) |
| Count 19 | 21 U.S.C. § 848(e)(1)(A) (CCE murder of Dorothy Mae Armstrong) |

4

| Count 21 | 18 U.S.C. § 1959 (VICAR murder of Bobby Long) |
|---|---|
| Count 22 | 18 U.S.C. § 1959 (VICAR murder of Anthony Carter) |
| Count 23 | 18 U.S.C. § 1959 (VICAR murder of Dorothy Mae Armstrong) |

Count 26 charged Tipton with using, or aiding and abetting the use, of a firearm on or about February 19, 1992, during and in relation to the following crimes of violence or drug trafficking crimes:

| Count | Predicate Offense |
|---|---|
| Count 1 | 21 U.S.C. § 846 |
| Count 24 | 21 U.S.C. § 848(e)(1)(A) (CCE murder of Curtis Thorne) |
| Count 25 | 21 U.S.C. § 848(e)(1)(A) (CCE murder of Linwood Chiles) |
| Count 27 | 18 U.S.C. § 1959 (VICAR murder of Curtis Thorne) |
| Count 28 | 18 U.S.C. § 1959 (VICAR murder of Linwood Chiles) |
| Count 29 | 18 U.S.C. § 1959 (VICAR maiming of Priscilla Green) |
| Count 30 | 18 U.S.C. § 1959 (VICAR maiming of Gwendolyn Green) |

These charges stemmed from Tipton's leadership role, along with Cory Johnson and James Roane, in a continuing criminal enterprise, the "New York Boyz," that trafficked large quantities of cocaine in the Richmond, Virginia area between 1990 and 1992.

As relevant to this appeal, the jury received the following instructions highlighting the crime of violence or drug trafficking predicates underlying the § 924(c) counts:

> In order to sustain its burden of proof of the crime of using or carrying a firearm during and in relation to a crime of violence or drug trafficking crime as charged in Counts ... **Twenty** and **Twenty-Six** of the indictment, the government must prove the following two essential elements beyond a reasonable doubt: One, the defendant committed the crime as charged in the indictment; and two, during and in relation to the commission of that crime, the defendant knowingly used or carried a firearm.
>
> The term "crime of violence" means an offense that is a felony and has as one of its essential elements the use, the attempted use, or threatened use of physical force against the person or property of another, or an offense that by its very nature involves a substantial risk that such physical force may be used in committing the offense.
>
> The term "drug trafficking crime" means an offense that is a felony and involves the distribution, manufacture, or importation of any controlled substances. The offenses alleged in Counts ... **Seventeen**, **Eighteen**, **Nineteen**, **Twenty**-**One**, **Twenty-Two**, **Twenty-Three**, **Twenty-Four**, **Twenty-Five**, **Twenty-Seven**, **Twenty-Eight**, **Twenty-Nine**, **Thirty**, Thirty-One, Thirty-Two, and Thirty-Three are crimes of violence or drug trafficking crimes.

JA145–JA146 (emphasis added).

In February 1993, the jury convicted Tipton of six capital murders under § 848(e)(1)(A) (Counts 3, 17, 18, 19, 24, 25); conspiracy to possess cocaine base with the intent to distribute under § 846 (Count 1); engaging in a continuing criminal enterprise under § 848(a) (Count 2); committing violent crimes in aid of racketeering activity under § 1959 (Counts 4, 21, 22, 23, 27, 28, 29, 30); using a firearm in relation

6

to a crime of violence or a drug-trafficking offense under § 924(c) (Counts 20 and 26); and possession of cocaine base with the intent to distribute under § 841(a)(1) (Counts 32 and 33). Following a penalty hearing on the capital murder counts, the jury recommended that Tipton be sentenced to death on three of the six § 848(e) murders—the murders Douglas Talley, Curtis Thorne, and Linwood Chiles.[1]

In accordance with the jury's recommendation, the Honorable James R. Spencer sentenced Tipton to death. After sentencing, the district court refused to order the defendants' execution on the grounds that Congress neither authorized the means by which the death sentences were to be carried out nor authorized the Attorney General to implement regulations to that effect.

All three defendants appealed their convictions and sentences and the government cross-appealed the district court's stay of execution of the death sentences. This Court affirmed the defendants' convictions and sentences, with the exception of the § 846 cocaine conspiracy (Count 1), which it vacated as being a lesser included offense of the § 848 continuing criminal enterprise conviction (Count 2). *See United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996). The Court also reversed the district court's refusal to execute the defendants' death sentences. *Id*. at 903.

---

[1] Codefendants James Roane and Cory Johnson also received death sentences. Cory Johnson was executed on January 14, 2021, after the Supreme Court denied a stay-of-execution. *See Johnson v. Rosen*, 141 S. Ct. 1233 (2021).

**B. Tipton files a motion to vacate his § 924(c) convictions.**

In May 2020, Tipton filed a motion for authorization to file a successive petition under § 2255 challenging his two § 924(c) convictions under *Davis* and *Borden*. The government opposed the motion, and after multiple rounds of briefing and two orders holding the case in abeyance, this Court granted the application by a 2-1 vote.

In February 2022, Tipton filed his § 2255 motion in the district court, arguing that his two § 924(c) convictions were invalid. JA14–JA59. Specifically, Tipton argued that the predicate offenses underlying his convictions—VICAR murder or maiming, in violation of § 1959(a), and CCE murder, in violation of § 848(e)(1)(A)—fail to qualify as crimes of violence under § 924(c)(3)(A).

Tipton also urged the court to adopt a framework for assessing multi-predicate § 924(c) convictions that required absolute certainty regarding which predicate the jury relied on to convict, a legal theory that many other defendants pressed and that this Court ultimately rejected. Under Tipton's theory, the question of which predicate a jury relied on is not a question of fact but instead is a question of law. And the question of law would be answered by using the "modified categorical approach" to determine on which predicate offense the jury necessarily relied. JA32–JA36. As Tipton explained, "[u]nder the modified categorical approach, therefore, an offense cannot serve as the predicate for a § 924(c) conviction unless the *Shepard*

documents establish with 'certainty' that the defendant was 'necessarily' convicted of an offense that meets its surviving definition for a crime of violence." JA35–JA35; *see also* JA35 ("when it cannot be conclusively determined that the defendant was convicted of an offense that categorically qualifies as a 'crime of violence,' courts should assume that he was convicted of the 'least serious' conduct criminalized by the underlying statute."). Relatedly, Tipton argued that where "multiple potential predicates are put before the jury, a § 924(c) conviction cannot be sustained if even one of the possible predicates is not categorically a crime of violence under its force clause and the *Shepard* documents do not conclusively establish the basis of the conviction." JA36.

The government opposed Tipton's motion, first arguing that he had procedurally defaulted any challenge to his firearm convictions and that even if he could show "cause" for his default, he still would not be able to demonstrate prejudice.

As to prejudice, the government argued that § 846 (Count 1) and § 848(e)(1)(A) (Counts 17-19, 24-25) were "drug-trafficking crimes," the definition of which *Davis* did not alter. JA105–JA106 (citing 18 U.S.C. § 924(c)(2)). Thus, because both of Tipton's § 924(c) convictions (Counts 20 and 26) relied on multiple § 848(e)(1)(A) predicates and a § 846 predicate, his firearm convictions remained valid notwithstanding *Davis* and *Borden*. *Id*. The government further argued that

9

CCE murder and VICAR murder and maiming were crimes of violence under § 924(c)(3)(A).

Finally, the government argued that even if the court concluded that some of the offenses underlying Tipton's § 924(c) convictions were invalid, his motion would still fail under governing precedent. Contrary to the theory urged by Tipton, harmless-error review did not require absolute certainty regarding which predicate the jury relied. The government explained that *United States v. Ali*, 991 F.3d 561 (4th Cir. 2021), had rejected that very argument under plain error review and the recent decision in *United States v. Said*, 26 F.4th 653 (4th Cir. 2022), confirmed that "ambiguity" and "mere uncertainty" were insufficient to establish a "substantial and injurious" effect on collateral review. JA110–JA118. Thus, under *Said*, Tipton was required to show more than a reasonable possibility that the jury *only* found him guilty on Counts 20 and 26 in reliance on the invalid predicate. Because, the government argued, Tipton had barely attempted to make that showing, his motion—even assuming the invalidity of some predicate offenses—necessarily failed. The government also explained that Tipton's plea for the district court to use the modified categorical approach to determine on which predicate offense the jury necessarily relied was foreclosed by both *Ali* and *Said*. JA114–JA115.

### C. The district court denies Tipton's motion.

In November 2022, the district court denied Tipton's § 2255 motion. JA134–

JA163. The court first held that Counts 20 and 26 relied on valid "drug trafficking" and "crime-of-violence" predicates. The court explained that § 924(c)(2) defines "drug trafficking crime" to include "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)," which easily encompassed Tipton's convictions under § 846 (Count 1) and § 848(e)(1)(A) (Counts 17-19, 24-25). JA147–JA150. The court further highlighted that Tipton "largely ignores the fact that his § 924(c) convictions could be predicated upon drug trafficking crimes." JA147 n.6.

As to § 846 narcotics conspiracy (Count 1), the court rejected the argument that it could not consider that count because this Court had vacated it on appeal for double jeopardy reasons. As the court explained, a conviction under § 924(c) does not depend on a defendant being convicted of the underlying crime. JA148 (citing *United States v. Hopkins*, 310 F.3d 145, 153 (4th Cir. 2002)). Moreover, the jury convicted Tipton of conspiring to traffic at least 50 grams of crack cocaine and this Court's vacatur on appeal was rooted solely in the fact that the conspiracy offense was a lesser included of the CCE conviction, not in any defect in the prosecution. *Id*.

Next, the court explained that in addition to being a "drug trafficking crime," § 848(e)(1)(A) was also a crime of violence under § 924(c)(3)(A). JA150–JA158. The court rejected Tipton's *Borden* argument that one could commit a CCE murder recklessly, explaining that "the statute explicitly requires an intentional killing

11

created by the defendant's intentional behavior, satisfying the heightened *mens rea* requirement." JA153–JA155. As the court explained, "[t]he statute provides that anyone engaging in a CCE 'who *intentionally* kills or counsels, commands, induces, procures or causes the *intentional* killing of an individual and such killing results' is subject to conviction of CCE murder." JA153 (quoting § 848(e)(1)(A)).

Next, the court held that § 848(e)(1)(A) required sufficient use of force to qualify under § 924(c)(3)(A) because it "requires an intentional killing and that the killing actually results" and thus, the "elements of the offense require infliction of 'the greatest physical injury imaginable–death.'" JA156 (quoting *United States v. Jackson*, 32 F.4th 278, 287 (4th Cir. 2022)). The court further explained that the statute's prohibition on counseling, commanding, inducing, procuring, or causing an intentional killing was akin to aiding and abetting liability, and that aiding and abetting a crime of violence qualifies under § 924(c)(3)(A). *Id.* (citing *Ali*, 991 F.3d at 574); *see also Said*, 26 F.4th at 661.

Having determined that both of Tipton's § 924(c) convictions rely on valid drug trafficking or crime of violence predicates, the court next held that Tipton would still fail to show any prejudice even if some of his predicates constituted valid predicates and some did not. JA246.[2] As the court explained, under this Court's

---

[2] The district court did not determine whether VICAR murder is a crime of violence because Tipton's "convictions rest on multiple other valid predicates." JA158 n.11. About one month after deciding Tipton's case, the district court denied

precedent, even if some of his predicates did not qualify, Tipton would still have to show "'more than a reasonable possibility' that the jury only found him guilty of Counts Twenty and Twenty-Six, because it improperly considered one of the listed predicate counts to be a crime of violence." JA159 (quoting *Said*, 26 F.4th at 662). The court held that Tipton could not meet that burden and that "[c]ommon sense dictates that the jury had at least one of the[] valid predicates in mind when it convicted Defendant on Count Twenty and Twenty-Six." *Id.*

This appeal followed.

### Summary of Argument

Tipton's challenge to the predicates underlying his § 924(c) convictions fails for several reasons. First, both of Tipton's § 924(c) convictions rely on CCE murder predicates under § 848(e)(1)(A), which the district court correctly concluded are drug-trafficking crimes under § 924(c)(2), a provision that is unaffected by *Davis* and *Borden*. Additionally, both § 924(c) convictions encompass drug conspiracy predicates, which also are valid under § 924(c)(2). Thus, the Court can affirm both challenged convictions without even considering *Davis* and *Borden*.

Second, in addition to being a drug trafficking crime, § 848(e)(1)(A) is a crime

---

codefendant's Roane's § 2255 motion, and in doing so held that VICAR murder is a crime of violence. *See United States v. Roane*, No. 3:22-cv-98 (DJN), 2022 WL 16700390, at *8-*11 (E.D. Va. Nov. 3, 2022). That case is on appeal before this Court in *United States v. Roane*, No. 23-1.

of violence. Every prosecution under § 848(e)(1)(A) requires the government to prove an intentional murder. Because murder is the quintessential crime of violence, and because an intentional murder cannot be committed recklessly, § 848(e)(1)(A) satisfies both *Davis* and *Borden*. To the extent the capital gateway factors are viewed as lowering the *mens rea* for § 848(e)(1)(A) to a standard equivalent to depraved-heart murder, this Court has already held that depraved-heart murder falls within § 924(c)(3)(A).

Third, both of Tipton's § 924(c) convictions rely on VICAR murder predicates under § 1959(a). In several decisions, this Court has held that VICAR murder premised on a violation of Virginia's first- and second-degree murder statute qualifies as a crime of violence, and that first-degree federal murder under § 1111(a), qualifies as well. Every possible standard that would support liability for a VICAR murder charge in Tipton's case satisfies § 924(c)(3)(A). Moreover, to be convicted under § 1959(a) a defendant must have the purpose to increase or maintain his position in the enterprise. Thus, the VICAR statute carries its own heightened *mens rea* element, which precludes any argument that one may violate the statute recklessly.

Finally, even if the Court concludes that some of the underlying predicates are no longer valid, Tipton's challenge would still fail. Under *United States v. Said*, 26 F.4th 653 (4th Cir. 2022), ambiguity and uncertainty are not enough on collateral

14

review for Tipton to show a "substantial and injurious effect" on his verdict. Instead, Tipton must show more than a reasonable possibility that the jury *only* found him guilty on Counts 20 and 26 in reliance on the invalid predicate. But here, Tipton has failed to make that showing.

Indeed, on the facts of this case, Tipton could not possibly satisfy *Said*. The jury found Tipton guilty of, among other things, the murders of Douglas Talley, Dorothy Mae Armstrong, Bobby Long, Anthony Carter, Curtis Thorne, and Linwood Chiles. On direct appeal, this Court explained that the murders that formed the basis of the § 924(c) convictions were "all in relation to [the defendants'] drug-trafficking operation," and occurred "because their victims were suspected of treachery or other misfeasance, or because they were competitors in the drug trade, or because they had personally offended one of the 'partners.'" Both of Tipton's § 924(c) convictions have drug-trafficking and murder predicates that controlling precedent establish are valid; the jury separately convicted Tipton of each of those predicate offenses, removing any doubt that the jury unanimously found each predicate proven; and each of those predicates was furthered through a firearm, given that the murders were all drug-related and accomplished with a gun.

Applying *Said*, the district court concluded that "[c]ommon sense dictates that the jury had at least one of these valid predicates in mind when it convicted Defendant on Count Twenty and Twenty-Six." Because Tipton has offered nothing

15

on appeal to rebut that commonsense conclusion, this Court should affirm.

**Argument**

**I.     Tipton's challenge to his § 924(c) convictions is procedurally defaulted.**

Although the harmlessness standard discussed in *Said* itself suffices to require upholding Tipton's § 924(c) convictions if *any* of the predicate offenses are valid, Tipton faces the further barrier to relief in that his challenge to his convictions is procedurally defaulted.

"[T]he United States has an interest in the finality of sentences imposed by its own courts[.]" *Jones v. Hendrix*, —S. Ct.—, 2023 WL 4110233, at *13 (U.S. June 22, 2023). Thus, "[p]rinciples of procedural default sharply limit a prisoner's ability to raise on collateral review claims not raised in his initial criminal proceeding or on direct appeal." *Marlowe v. Warden, FCI Hazelton*, 6 F.4th 562, 571 (4th Cir. 2021); *see also United States v. Sanders*, 247 F.3d 139, 145–46, 151 (4th Cir. 2001) (recognizing relationship between procedural default and finality). By not challenging his firearm convictions before they became final, Tipton procedurally defaulted such a challenge. *See Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *United States v. Fugit*, 703 F.3d 248, 253–54 (4th Cir. 2012). That default "may be excused in two circumstances: where an inmate attacking his conviction can establish (1) that he is 'actually innocent' or (2) 'cause' for the default and 'prejudice resulting therefrom." *Fugit*, 703 F.3d at 253 (quoting *Bousley*, 523 U.S.

16

at 621).

Tipton cannot satisfy either standard. First, Tipton is not actually innocent of Counts 20 and 26 because these counts all rely on still-valid drug trafficking or crime of violence predicates. *See United States v. Green*, 67 F.4th 657, 671 (4th Cir. 2023) (rejecting actual innocence claim where underlying predicate remained valid).

Second, although this Court has found "cause" established for some *Davis* challenges, *see United States v. McKinney*, 60 F.4th 188, 193–195 (4th Cir. 2023), this case is readily distinguishable from *McKinney*. At the time of Tipton's convictions, none of the Supreme Court rulings on the validity of residual clauses that *McKinney* invoked had been decided, *McKinney*, 60 F.4th at 194 (citing opinions from 2007, 2011, and 2012), and constitutional vagueness challenges were readily available. *See* JA99–JA110 n.2 &3 (listing cases); *see also United States v. Vargas-Soto*, 35 F.4th 979, 994 (5th Cir. 2022) ("[T]he Supreme Court has recognized that criminal statutes are subject to vagueness challenges since at least 1954." (citing *United States v. Harriss*, 347 U.S. 612, 617 (1954))); *Granda v. United States*, 990 F.3d 1272, 1287 (11th Cir. 2021) ("due process vagueness challenges to criminal statutes were commonplace. Thus, for example, litigants had for years before Granda's appeal argued (without success) that various other provisions of § 924(c) were unconstitutionally vague."); *Gatewood v. United States*, 979 F.3d 391, 397 (6th Cir. 2020) ("from Gatewood's sentencing in 1997 to the

17

conclusion of his direct appeal in 2002, the tools to construct his present vagueness claim existed, and no Supreme Court precedent foreclosed it."); *accord Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939) (applying vagueness doctrine to penal statute). And beyond that, the government preserves its position that *McKinney* misconstrued the standards for cause. *McKinney*'s reasoning wrongly conflates futility (which is insufficient to demonstrate cause) with unavailability (which can suffice to demonstrate cause). *Cf. Greer v. United States*, 141 S. Ct. 2090, 2099 (2021) (rejecting futility exception to plain error).

Third, Tipton cannot establish prejudice under *Said*. Tipton's firearm convictions continue to rely on valid predicate offenses, even after *Davis* and *Borden*. *See Green*, 67 F.4th at 668 ("Where a petitioner collaterally attacks a § 924(c) conviction solely on the ground that a predicate offense is invalid after *Davis*, the petitioner cannot show prejudice if the predicate qualifies as a crime of violence under the elements clause."). And even if some predicates no longer qualify, Tipton has failed to establish that the jury convicted him *solely* in reliance on those invalid predicates.

### A. Narcotics distribution conspiracy under § 846 is a drug trafficking crime.

The jury convicted Tipton in Count 1 of conspiring to distribute narcotics, in violation of § 846. Both of Tipton's § 924(c) convictions have this § 846 conspiracy as a predicate.

18

To be convicted of a § 924(c) offense, the government must prove that the defendant used a firearm in furtherance of either a crime of violence or a "drug trafficking crime." Section 924(c)(2) defines "drug trafficking crime" to include "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)[.]" § 924(c)(2). Section § 846 falls within the definition of "drug trafficking crime," a definition that *Davis* did not affect. *See United States v. Simms*, 914 F.3d 229, 252 (4th Cir. 2019) (en banc) (striking down § 924(c)(3)(B) as vague but "leav[ing] intact … the entirety of the definition of 'drug trafficking crime' in § 924(c)."); *see also United States v. Eldridge*, 2 F.4th 27, 36 n.9 (2d Cir. 2021) ("*Davis* interpreted only the definition of a crime of violence, and thus had no effect on the scope of drug offenses that may also serve as predicates for § 924(c) convictions, see 18 U.S.C. § 924(c)(2)."); *United States v. Cannon*, 987 F.3d 924, 946 (11th Cir. 2021) (same). This Court can uphold a § 924(c) conviction solely in reliance on a "drug trafficking crime." *Hare*, 820 F.3d at 106. Thus, the Court can resolve this entire appeal on that basis alone.

Tipton argues that the district court erred in relying on Count 1 because there were multiple underlying predicates. (Def. Br. 40–41.) But that fact is legally insignificant because "the Government need only prove *one* qualifying predicate offense." *Jackson*, 32 F.4th at 283 (emphasis added). And "a § 924(c) conviction

19

may stand even if the jury based its verdict on an invalid predicate, so long as the jury *also* relied on a valid predicate." *Said*, 26 F.4th at 659.

Moreover, as the district court explained, a conviction under § 924(c) does not depend on a defendant being convicted of the underlying crime. JA148 (citing *Hopkins*, 310 F.3d at 153). Here, Tipton was convicted of Count 1 but the Court vacated it on appeal double jeopardy reasons. Tipton makes no argument that the evidence was insufficient to convict him on Count 1, and even he did, it would make no difference under *Hopkins*. That Tipton's § 924(c) convictions are predicated on multiple crimes of violence or drug trafficking offenses is irrelevant to the question presented. It may be true that *Hopkins* involved one predicate offense, but that fact has no bearing on this case. Count 1 remains a valid drug trafficking offense after *Davis* and *Borden*. And under *Hopkins*, the Court's vacatur is immaterial. Thus, the district court did not err in relying on Count 1 and this Court may properly consider it.[3]

_____

[3] Although the indictment charged the § 846 offense as a predicate drug-trafficking offense, the jury instructions did not enumerate the § 846 offense as a predicate. Tipton makes no argument on this score. Nevertheless, the § 846 offense was a lesser-included offense of the CCE offense, *Tipton*, 90 F.3d at 891 (citing *Rutledge v. United States*, 517 U.S. 292 (1996)), and Tipton's § 848(e) offenses relied on proof of a CCE, Tipton, 90 F.3d at 887. Thus, the jury necessarily found the § 846 offense was a predicate. Given that Tipton procedurally defaulted his § 924(c) challenges, he cannot show actual innocence or cause and prejudice.

### B. CCE murder under § 848(e)(1)(A) is a drug trafficking crime.

The jury convicted Tipton of the following CCE murders, in violation of § 848(e)(1)(A): Count 17 (murder of Bobby Long); Count 18 (murder of Anthony Carter); Count 19 (murder of Dorothy Mae Armstrong); Count 24 (murder of Curtis Thorne); and Count 25 (murder of Linwood Chiles). Counts 20 and 26 rely on these CCE murder predicates.

As noted, to be convicted of a § 924(c) offense, the government must prove that the defendant used a firearm in furtherance of either a crime of violence or a "drug trafficking crime." Section § 848(e)(1)(A) undeniably falls within the definition of "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)[.]" § 924(c)(2). *Davis* did not alter that definition, *see Simms*, 914 F.3d at 252; *Eldridge*, 2 F.4th at 36 n.9; *Cannon*, 987 F.3d at 946, and this Court can uphold a § 924(c) conviction solely in reliance on a "drug trafficking crime," even if another predicate is no longer a crime of violence. *See Hare*, 820 F.3d at 106. Thus, the Court can resolve Tipton's challenge to Counts 20 and 26 on that basis alone. CCE murder is a valid "drug trafficking crime" under § 924(c)(2) and thus, *Davis* and *Borden* have no bearing on these counts.

On appeal, Tipton concedes that § 848(e)(1)(A) can "be categorized as a drug-trafficking crime[.]" (Def. Br. 32.) Nevertheless, he argues that § 848(e)(1)(A) cannot be a "drug trafficking crime" because the CCE murders "Were Not

21

Prosecuted as Drug Trafficking Crimes." (Def. Br. 31.) Tipton also points out that this Court has previously characterized § 848(e)(1)(A) as a crime of violence. (Def. Br. 32.) But these arguments both miss the point and concede another.

First, a statute may be both a "crime of violence" *and* a "drug trafficking crime." Nothing in the text of § 924(c) or this Court's precedent indicates that the standards are mutually exclusive. That this Court has previously characterized § 848(e)(1)(A) as a crime of violence does not mean that the statute no longer falls within the meaning of "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)[.]" § 924(c)(2). Second, if, as Tipton suggests, this Court has previously found that § 848(e) is a 'crime of violence'" (Def. Br. 32), then he has conceded the validity of Counts 20 and 26 on alternate grounds.

Tipton's claim that § 848(e)(1)(A) cannot be a "drug trafficking crime" because the CCE murders "Were Not Prosecuted as Drug Trafficking Crimes" (Def. Br. 31) is also unavailing. The question whether a particular offense is a "drug trafficking crime" or "crime of violence" is a legal one. *See United States v. Adkins*, 937 F.2d 947, 950 n.2 (4th Cir. 1991) ("Whether an offense is a 'crime of violence' is a question of law for the court, and not a question of fact for the jury."). And the inquiry into whether § 848(e)(1)(A) is a drug trafficking crime is answered solely by looking at whether it falls within the definition of "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)." Because § 848(e) *does* fall

22

within that definition—a point Tipton cannot legitimately dispute—it is a drug trafficking crime, as a matter of law.

Nor does it matter, as Tipton argues, that the jury instructions identified all the crimes of violence and drug trafficking predicates together, without distinguishing which crimes fell into each category. (Def. Br. 32–33.) The trial judge instructed the jury that, as to Counts 20 and 26, "[t]he offenses alleged in Counts ... Seventeen, Eighteen, Nineteen, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Four, Twenty-Five, Twenty-Seven, Twenty-Eight, Twenty-Nine, [and] Thirty … are crimes of violence or drug trafficking crimes." JA145–JA146. That instruction was—and is—true as a matter of law, *see Adkins*, 937 F.2d at 950 n.2, and the jury was not required to join its finding of guilt to any particular definition under § 924(c)(2) or § 924(c)(3)(A). Tipton provides no authority for this novel suggestion.[4]

### C. CCE murder under § 848(e)(1)(A) is a crime of violence.

In addition to being a valid drug trafficking crime, § 848(e)(1)(A) is also a crime of violence. Under § 848(e)(1)(A), the government must prove that the defendant intentionally killed a person. Although § 848(e)(1)(A) has three distinct

---

[4] On Tipton's theory, the habeas court would have been barred from considering *any* of the predicates underlying Counts 20 and 26 because the trial judge never specifically instructed the jury that some were "crimes of violence," some were "drug trafficking crimes," and some were both. But not even Tipton goes this far.

ways in which a connection is drawn between the killing and the drug trafficking, *see United States v. Hager*, 721 F.3d 167, 179–80 (4th Cir. 2013), the government must still prove an intentional killing for every violation of § 848(e)(1)(A). Such proof satisfies § 924(c)(3)(A).

This Court has repeatedly held that an offense that requires proof of a murder satisfies § 924(c)(3)(A). *See, e.g.*, *Manley*, 52 F.4th at 149–151 (second-degree VICAR murder); *Jackson*, 32 F.4th 278 (premeditated first-degree murder under § 1111); *United States v. Roof*, 10 F.4th 314, 400–02 (4th Cir. 2021) (death-resulting offense under 18 U.S.C. § 249(a)(1)); *United States v. Mathis*, 932 F.3d 242, 264–65 (4th Cir. 2019) (first-degree VICAR murder); *In re Irby*, 858 F.3d 231, 236–38 (4th Cir. 2017) (second-degree retaliatory murder); *cf. United States v. Allred*, 942 F.3d 641, 654 (4th Cir. 2019) (knowingly engaging in conduct that causes bodily injury in violation of witness retaliation statute satisfies ACCA's elements clause); *United States v. Battle*, 927 F.3d 160, 167 (4th Cir. 2019) (Maryland conviction for assault with intent to murder satisfies ACCA's elements clause "because the offense contemplates an intentional causation of bodily injury").

Insofar as Tipton argues that § 848(e)(1)(A) can be violated by a bare omission, this Court has rejected such an argument. *See United States v. Rumley*, 952 F.3d 538, 551 (4th Cir. 2020). This Court and the Supreme Court have recognized that crimes of violence and violent felonies encompass crimes

"characterized by extreme physical force, such as murder, forcible rape, and assault and battery with a dangerous weapon." *United States v. Bryant*, 949 F.3d 168, 181 (4th Cir. 2020) (quoting *In re Irby*, 858 F.3d at 236; *Johnson v. United States*, 559 U.S. 133, 140–41 (2010)). Indeed, given that "the force necessary to overcome a victim's physical resistance is inherently 'violent' in the sense contemplated by *Johnson*," *Stokeling v. United States*, 139 S. Ct. 544, 553 (2019), it follows that the force needed to kill a person suffices.

Tipton argues that because § 848(e)(1)(A) can be committed recklessly, it fails to satisfy *Borden*. (Def. Br. 28–30; 37–40.) But, as the district court held, "the statute explicitly requires an intentional killing created by the defendant's intentional behavior, satisfying the heightened *mens rea* requirement." JA153–JA155. Indeed, "[t]he statute provides that anyone engaging in a CCE 'who *intentionally* kills or counsels, commands, induces, procures or causes the *intentional* killing of an individual and such killing results' is subject to conviction of CCE murder." *Id.* (quoting § 848(e)(1)(A)).

Still, Tipton asserts that § 848(e)(1)(A) fails to satisfy *Borden* because the statute "allows for an intent of 'extreme recklessness/grave risk of death,' a level that falls short of the intent required for a crime of violence under *Borden*[.]" (Def. Br. 29.) But this argument also fails. As an initial matter, the jury was not instructed that it could convict Tipton under a "grave risk of death" theory, and as discussed

below, if such a theory exists, it would be divisible. The trial judge instructed the jury using language that precisely tracks the statute: "while the defendant was so engaged, the defendant intentionally killed, or counseled, commanded, induced, procured, or caused the intentional killing of the individual victim named in a particular count; and three that the killing of that victim actually resulted." JA1523. There is no suggestion in this instruction that Tipton could have been convicted through conduct that was anything but intentional.

Tipton's "grave risk of death" theory appears to rely on the capital gateway factors, but that argument also fails. *Cf.* Def. Br. 29 (citing *United States v. Alvarez*, 266 F.3d 587, 594–95 (6th Cir. 2001)). The relevant capital intent factor at the time of Tipton's prosecution provided that the defendant must have "intentionally engaged in conduct which—(i) the defendant knew would create a grave risk of death to a person, other than one of the participants in the offense; and (ii) resulted in the death of the victim." 21 U.S.C. § 848(n)(1)(D).[5] Thus, § 848(n)(1)(D) requires the defendant to have engaged in *intentional* conduct that he *knew* would have created a grave risk of death and that death resulted from such intentional conduct. If anything, § 848(n)(1)(D) falls somewhere between the first and second most culpable mental states under *Borden*. *See Borden*, 141 S. Ct. at 1823 ("Purpose and

---

[5] Tipton's death sentence is controlled by the now-repealed procedures in 21 U.S.C. § 848, rather than the later Federal Death Penalty Act (FDPA). *See United States v. Stitt*, 552 F.3d 345, 354 (4th Cir. 2008).

knowledge are the most culpable levels in the criminal law's mental-state 'hierarchy.'"). Indeed, the jury's capital findings so reflect. *See Tipton*, 90 F.3d at 894 ("[T]he jury unanimously found as statutory aggravating factors all four of the (n)(1) factors, plus the (n)(8) factor that each of the murders was 'the result of substantial planning and premeditation.'").

At best for Tipton, § 848(n)(1)(D)'s language is synonymous with extreme recklessness. Tipton even concedes as much. *See* Def. Br. 29 ("§ 848(e)(1)(A) allows for an intent of 'extreme recklessness/grave risk of death'"). But under this Court's precedent, crimes that can be accomplished through extreme recklessness satisfy *Borden* and § 924(c)(3)(A). *See Manley*, 52 F.4th at 148–149. And if *Manley* found willful and purposeful conduct that was "likely to cause death or great bodily harm" to amount to "extreme recklessness," *id*. at 149–150, then *intentional* conduct that a defendant *knew* would create a *grave* risk of death—coupled with the resulting death—must, at the very least, fall within the same species of recklessness. *Id*. Thus, even if Tipton were correct that the gateway factors can broaden the intent required under § 848(e)(1)(A)—a suggestion that runs contrary to the plain language of the statute, the jury instructions (JA1523), and this case's bifurcated capital trial procedures—the gateway factors would then be elements that must be unanimously found by the jury, making them divisible, and here, the jury found that the murders

27

were "intentional" and "the result of substantial planning and premeditation." *Tipton*, 90 F.3d at 894.

Tipton also argues that § 848(e)(1)(A) does not require intentional conduct because it may be accomplished when a person "counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results." (Def. Br. 24–25.) The district court concluded that this provision of the statute was akin to aiding and abetting liability, and that, under this Court's precedent, aiding and abetting a crime of violence satisfies § 924(c)(3)(A). *See* JA156 (citing *Ali*, 991 F.3d at 574). On appeal, Tipton does not meaningfully challenge that conclusion. And the argument was further undercut when the Supreme Court construed similar language in another statute as capturing aiding and abetting. *See United States v. Hansen*, —S. Ct.—, 2023 WL 4138994, at *7 (U.S. June 23, 2023).

Tipton now asserts that because § 848(e)(1)(A) is not itself a crime of violence, then aiding and abetting that offense cannot be either. (Def. Br. 39–40.) As Tipton puts it, the relevant question is "whether the 'killing' prohibited by 848(e) is itself categorically a crime of violence." (Def. Br. 40.) But this question, as already explained, virtually answers itself. And if the Court concludes that the intentional killing required under the first prong of § 848(e)(1)(A) constitutes a crime of violence, then on Tipton's own theory, the entire offense qualifies as well.

28

Tipton also argues that § 848(e)(1)(A)'s prohibition on counseling, commanding, inducing, procuring, or causing an intentional killing fails to satisfy § 924(c)(3)(A) because the covered conduct does not itself require violence. (Def. Br. 30.) But in making this argument, Tipton ignores a critical phrase in the statute's second clause: "intentional killing." Even assuming the statute's first use of the word "intentionally" does not apply to the "counsels, commands, induces, procures, or causes" clause, the statute still requires those actions to produce an "*intentional* killing of an individual." As the Third Circuit recently explained, "[t]rue, the force required for aiding and abetting liability need not actually come from the abettor herself. But § 924(c) lacks any personal 'use of force' requirement, and the relevant inquiry looks to the elements of the underlying offense." *United States v. Stevens*, —F.4th—, 2023 WL 3940121, at *7 (3d Cir. June 12, 2023). And Tipton fails to explain how a person "engaging in or working in furtherance of a continuing criminal enterprise"—meaning, a person committing knowing and intentional violations of underlying drug laws and doing so as an organizer or supervisor of five or more people—could recklessly counsel, command, induce, procure, or cause an *intentional* killing of a human being. Indeed, § 848(e)(1)(A)'s list of verbs indicates that the statute requires a heightened mental state. As the district court explained, where "a defendant commits CCE Murder by counseling, commanding, inducing, procuring, or causing the victim to be killed, the active, intentional nature of each of

29

these verbs reflects the same degree of direct, knowing involvement and thus the same heightened culpability." JA154 (quoting *United States v. Smith*, 605 F. Supp. 3d 1, 21–22 (D.D.C. 2022) (citing dictionary definitions for each verb)).[6]

Moreover, Tipton's theory that a heightened *mens rea* does not apply to the "counsels, commands, induces, procures, or causes" provision of the statute ignores the extant authority on the statute. As the district court explained, "courts interpreting the CCE Murder statute have consistently found a heightened *mens rea* to apply, [that the defendant intend the killing to occur,] regardless of the form of defendant's contribution to the intentional killing." JA154 (citing cases). Tipton provides no authority to the contrary and his construction of the statute—if

---

[6] Relying on *United States v. Chapman*, 666 F.3d 220 (4th Cir. 2012), Tipton argues that "this Court must assume his § 848(e) conviction rested on the 'least serious of the disjunctive statutory conduct'—e.g., counseling his co-defendants." (Def. Br. 30.) Elsewhere, Tipton makes a similar suggestion, this time, in reliance on *United States v. Vann*, 660 F.3d 771 (4th Cir. 2011) (Def. Br. 17 n.16.) But *Chapman* and *Vann* are inapposite. Alternative theory error in the jury-trial context is governed by *Ali* and *Said*, not *Chapman* and *Vann*. Moreover, unlike in *Vann* and *Chapman*, there is no "least serious" offense contained in § 924(c). A defendant convicted of violating § 924(c) is guilty of the same offense, and subject to the same penalty, irrespective of the predicate supporting the conviction. This stands in stark contrast to *Vann*'s own reasoning "that a defendant convicted under a conjunctively charged indictment cannot be sentenced—in the absence of a special verdict identifying the factual bases for conviction—to a term of imprisonment exceeding the statutory maximum for the 'least-punished' of the disjunctive statutory conduct." 660 F.3d at 774 (citation omitted). Tipton faces the exact same statutory sentencing range irrespective of the predicate supporting his § 924(c) conviction.

adopted—would subject defendants to death-eligible criminal liability for such things as the reckless inducement of an intentional murder.

Not only does Tipton offer no support for the existence of this type of hypothetical liability under § 848(e)(1)(A), but the notion itself would conflict sharply with the principle that, to be liable, an aider and abettor must have the specific intent to aid in the commission of the underlying crime. *See Rosemond v. United States*, 572 U.S. 65, 76 (2014). And "this 'specific intent' requirement, combined with the causation of bodily injury, necessarily entail[s] the use of physical force." *Manley*, 52 F.4th at 148; *see also United States v. Runyon*, 994 F.3d 192, 204 (4th Cir. 2021) ("If a defendant willingly agrees to enter into a conspiracy with the specific intent that a murder be committed for money and death results from that agreement, it follows that the defendant acted with specific intent to bring about the death of the conspiracy's victim."). At best, Tipton may be describing a form of depraved-heart murder. But even assuming such a theory was available under § 848(e)(1)(A), it would still be covered by § 924(c)(3)(A). *See Manley*, 52 F.4th at 148–149; *see also United States v. Begay*, 33 F.4th 1081, 1089–96 (9th Cir.) (en banc), *cert. denied*, 143 S. Ct. 340 (2022); *United States v. Baez-Martinez*, 950 F.3d 119, 124–25 (1st Cir. 2020); *Thompson v. United States*, 924 F.3d 1153, 1157 (11th Cir. 2019).

Additionally, even if a heightened *mens rea* did not apply to the string of verbs Tipton challenges, it would make no difference. Section 848(e)(1)(A) requires proof of a murder. One way or the other, somebody must be intentionally killed for liability to attach, as the Third Circuit emphasized in *Stevens*. So, it is largely irrelevant whether a defendant himself intentionally fires a gun at a victim, or instead induces someone else to deliberately do so. At bottom, the statute requires a completed use of intentional force culminating in a murder. Thus, § 848(e)(1)(A) is "an offense that is a felony" that "has as an element the use, attempted use, or threatened use of physical force against the person[.]" § 924(c)(3)(A). The *offense* itself must involve force. But "[i]t doesn't require the defendant's use, attempted use, or threatened use of force." *United States v. Harrison*, 54 F.4th 884, 890 (6th Cir. 2022). For this reason, Tipton's claim (Def. Br. 26) that "[b]ecause the jury was not required to find [he] actually used intentional force, his conviction does not satisfy the § 924(c)(3)(A)'s force clause" misses the point. As noted, § 924(c)(3)(A) requires the underlying offense to have as "an element the use, attempted use, or threatened use of physical force." It does not require the defendant himself use that force. *Id.* If it did, then this Court's *Ali* decision—which held that an aider and abettor of a Hobbs Act robbery who himself committed no violence—would be wrong. Section 848(e)(1)(A) requires a completed murder that can only occur through an intentional use of force. It is therefore irrelevant whether Tipton or a codefendant supplied the

32

requisite force. *See Harrison*, 54 F.4th at 890 ("When the underlying crime requires use of physical force, and the complicity statute requires the underlying crime occur, 'then the complicity conviction necessarily includes the physical force element.' It's enough that complicity to commit murder requires use of force by someone; that someone didn't have to be Harrison.").

Finally, even if § 848(e)(1)(A)'s second clause countenanced Tipton's theory it would make no difference in this case. Following a penalty hearing on the capital murder counts, the jury recommended that Tipton be sentenced to death on three of the CCE Murders. And in doing so, the jury unanimously found all the gateway intent factors, including that Tipton intentionally killed the victim of the capital crime. *See Tipton*, 90 F.3d at 894 ("[T]he jury unanimously found as statutory aggravating factors all four of the (n)(1) factors, plus the (n)(8) factor that each of the murders was 'the result of substantial planning and premeditation.'"). These "intent and aggravating factors which the government … rel[ies] upon to render a defendant death-eligible under the FDPA are the functional equivalent of elements of the capital offenses and must be charged in the indictment, submitted to the petit jury, and proved beyond a reasonable doubt." *United States v. Higgs*, 353 F.3d 281, 298 (4th Cir. 2003); *see also Ring v. Arizona*, 536 U.S. 584, 609 (2002) ("[A]ggravating circumstance[s] necessary for imposition of the death penalty" are elements of the capital offense that must be found by a jury); *Mathis v. United States*,

33

136 S. Ct. 2243, 2256 (2016) ("If statutory alternatives carry different punishments, then under *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)] they must be elements."); *Burrage v. United States*, 571 U.S. 204, 210 (2014) (any fact that "increase[s] the minimum and maximum sentences to which [a defendant is] exposed … is an element that must be submitted to the jury and found beyond a reasonable doubt"). Thus, because any one of the § 848(n)(1) factors satisfies § 924(c)(3)(A), it follows that "[a]ny offense that incorporates the elements of [§ 848(n)(1)] is a crime of violence[.]" *In re Hall*, 979 F.3d 339, 345–46 (5th Cir. 2020) (so holding under the identical FDPA).

### D. VICAR murder is a crime of violence.

As discussed, both of Tipton's § 924(c) convictions are supported by valid drug trafficking predicates. For this reason, the Court can affirm Tipton's convictions without even considering VICAR murder, *Davis*, or *Borden*. Nevertheless, as recently explained in the companion case, *United States v. Roane*, No. 23-1 (response brief filed June 12, 2023), VICAR murder satisfies § 924(c)(3)(A) and is yet another basis to affirm Tipton's convictions.

The jury convicted Tipton of the following four counts of VICAR murder, in violation of § 1959(a)(1): Count 21 (murder of Bobby Long); Count 22 (murder of Anthony Carter); Count 23 (murder of Dorothy Mae Armstrong); Count 27 (murder

34

of Curtis Thorne); and Count 28 (murder of Linwood Chiles). Each of Tipton's § 924(c) convictions rely on several of these VICAR murders.

Section 1959 requires that a defendant's conduct "constitute[s] one of the enumerated federal offenses as well as the charged state crime," *United States v. Keene*, 955 F.3d 391, 393 (4th Cir. 2020), and therefore, the elements of the generic federal offense or the state offense (or both working in combination) forming the entire VICAR offense may be used to show that a VICAR offense falls within § 924(c)(3)(A).

Here, the indictment did not explicitly cross-reference an underlying state or federal murder statute. Instead, each count in the indictment stated that Tipton and his codefendants "did knowingly, intentionally, and unlawfully cause the murder of" each named victim. JA76–JA80. Contrary to Tipton's arguments (Def. Br. 22–26), that fact is irrelevant for purposes of this appeal because, as the district court concluded in the companion case, *United States v. Roane*, No. 3:22-cv-98 (DJN), 2022 WL 16700390, at *8-*11 (E.D. Va. Nov. 3, 2022), every possible contender for a murder predicate satisfies § 924(c)(3)(A). And a successive § 2255 raising a *Davis* challenge is not the avenue to seek relief for a freestanding claim of error in jury instructions or in the indictment.

This Court has held that VICAR murder premised on a violation of Virginia's first and second-degree murder statutes qualifies as a crime of violence. *See Manley*,

35

52 F.4th at 149 (second-degree VICAR murder); *Mathis*, 932 F.3d at 265 (first-degree VICAR murder). This Court has also held that federal murder qualifies under § 924(c)(3)(A). *See Jackson*, 32 F.4th 278 (first-degree federal murder); *In re Irby*, 858 F.3d at 238 (federal second-degree murder). The murders in Tipton's case all involved first-degree murder because they were premeditated. Additionally, even assuming Tipton's convictions were premised on common law murder, that too would satisfy § 924(c)(3)(A). *See Roane*, No. 3:22-cv-98 (DJN), 2022 WL 16700390, at *10. A premeditated murder under the common law easily satisfies § 924(c)(3)(A). *See Jackson*, 32 F.4th at 286–87. On appeal, Tipton makes no argument to the contrary. Instead, he suggests that VICAR murder can be committed "without intent." (Def. Br. 24.) But it is impossible to square that suggestion with the fact that the jury found the murders at issue were "intentional" and "the result of substantial planning and premeditation." *Tipton*, 90 F.3d at 894. Nor can Tipton reconcile his suggestion with the language of the indictment, which specified that Tipton and his codefendants "did knowingly, intentionally, and unlawfully cause the murder of" each named victim. JA76–JA80. Much like *Jackson*, this is not a case involving some lesser degree of murder.

Tipton's *Borden* argument is even less persuasive when considered in the context of the VICAR statute, which itself carries a heightened *mens rea* element. Under § 1959(a), the defendant must commit the specified crime for the purpose of

36

increasing or maintaining his position (or the position of another) in the criminal enterprise. *See Keene*, 955 F.3d at 394; *United States v. Zelaya*, 908 F.3d 920, 926–27 (4th Cir. 2018). This heightened *mens rea* requirement applies to all the offenses enumerated in § 1959(a). *See Roof*, 10 F.4th at 404 ("[The] mens rea elements [of the statute in question] cannot be limited to their individual clauses."). Thus, for every VICAR crime, the government must establish either that the defendant acted intentionally (because he committed the VICAR offense for money) or that the defendant acted with the purpose of maintaining or increasing his position in the criminal enterprise. The government satisfies the second showing if "the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." *Zelaya*, 908 F.3d at 927 (quoting *United States v. Fiel*, 35 F.3d 997, 1004 (4th Cir. 1994)). Thus, the defendant must have the purpose to increase or maintain his position in the enterprise, which precludes the existence of a reckless *mens rea* before committing the crime. *See Manley*, 52 F.4th at 152 (Niemeyer, J., concurring).

Tipton also makes much of the fact that the indictment did not explicitly incorporate any underlying statute. (Def. Br. 22–26.) But he provides no authority requiring the government to do so. To sustain a VICAR conviction under § 1959, the government must prove that: (1) there was a racketeering enterprise; (2) it was

37

engaged in racketeering activity (3) the defendant had a position in the enterprise; (4) the defendant committed the alleged crime of violence; and (5) his general purpose in so doing was to maintain or increase his position in the enterprise. *Zelaya*, 908 F.3d at 926–27. Regarding the fourth element, the jury only needed to conclude that Tipton committed the alleged crime of violence. Here, there was only one crime of violence alleged, and that crime was an intentional murder. The question whether that crime satisfies § 924(c)(3)(A) is a legal one, *see Adkins*, 937 F.2d at 950 n.2, and the jury would have had no role in that determination even if the indictment contained an explicit cross-reference to one or more statutes.

At bottom, notwithstanding the type of murder supporting the VICAR counts—state, federal, or common law—Tipton was charged with and convicted of knowing and intentional murders. *See Tipton*, 90 F.3d at 894. This fact dooms his *Borden* argument. *See Jackson*, 32 F.4th at 286–87.

Lastly, Tipton argues that because the VICAR murder instruction included a conspiracy-based theory of liability he was somehow convicted of conspiracy to commit VICAR murder, which would not be a crime of violence. (Def. Br. 19–22.) The challenged jury instruction provided that a defendant would be guilty under § 1959 if he "knowingly and intentionally commit[ted] or conspire[d] to commit the crime charged in the particular count under consideration." JA1525. Tipton argues that because the jury was not required to make any finding specifying on what

38

ground it convicted "this Court must assume that [he] was convicted of conspiracy[.]" (Def. Br. 19–21.)

Tipton's attempt to seek refuge in this jury instruction fails. First, the indictment makes clear that Tipton and his codefendants were charged with "knowingly, intentionally, and unlawfully caus[ing] the murder of" each named victim. JA76–JA80. This was not a conspiracy case. Second, that the instruction added a conspiracy provision is of no moment. As *Ali* held, it is irrelevant that "we do not know for certain which theory of guilt [aiding and abetting or conspiracy] the jury accepted" because "ambiguity" and "uncertainty" are insufficient under plain error review. *Ali*, 991 F.3d at 575. Instead, to succeed on such an argument, Tipton must show that his conviction rested solely on the conspiracy theory of liability. *Id*. And "[a]n even more stringent standard applies in a § 2255 case like the one at bar." *Said*, 26 F.4th at 660. Tipton has made no attempt at demonstrating that his VICAR murder convictions were premised on a conspiracy theory of liability. Instead, he relies on supposed ambiguity and uncertainty—the exact thing *Ali* and *Said* have instructed defendants not to do. And much like *Ali*, the evidence in this case, *see infra* Section I.E, demonstrates that Tipton "did more than simply conspire to commit" murders but that he actually committed them or aided and abetted their commission. *Ali*, 991 F.3d at 576. And again, the type of error Tipton asserts here neither satisfies 28 U.S.C. § 2255(h)(2) nor overcomes procedural default.

### E. VICAR maiming is a crime of violence.

The jury convicted Tipton of the following two counts of VICAR maiming, in violation of §1959(a)(2): Count 29 (maiming of Priscilla Green) and Count 30 (maiming of Gwendolyn Green). In addition to the CCE murder and VICAR murder counts, these two convictions also support Count 26. Because Count 26 is supported by CCE murder and VICAR murder counts, the Court need not reach the question whether VICAR maiming satisfies § 924(c)(3)(A). However, for the sake of completeness, the government will address this issue as well.

This Court has already concluded that a VICAR offense based on Virginia malicious wounding satisfies § 924(c)(3)(A). *See Manley*, 52 F.4th at 148–149; *Rumley*, 952 F.3d at 551. And under any federal generic definition of maiming, the same precedent that establishes that Virginia malicious wounding qualifies would also suffice, as further illustrated by this Court's other cases. *See Allred*, 942 F.3d at 654 (knowingly engaging in conduct that causes bodily injury in violation of witness retaliation statute satisfies ACCA's elements clause); *Battle*, 927 F.3d at 167 (Maryland conviction for assault with intent to murder satisfies ACCA's elements clause "because the offense contemplates an intentional causation of bodily injury").

On appeal, Tipton provides no argument on the merits of whether state or generic maiming qualifies as a crime of violence. Instead, he relies on the fact that the VICAR maiming counts did not explicitly cross-reference a federal or state

40

offense. (Def. Br. 27.) But as already explained, that omission has no bearing on the question whether the offense is itself a crime of violence. If federal and state maiming offenses satisfy § 924(c)(3)(A) then the VICAR maiming counts rely on a valid crime of violence.

At bottom, Tipton's dispute with the language of the indictment has little to do with the legal question whether an offense satisfies § 924(c)(3)(A). Instead, his objection resembles a challenge to the sufficiency of the indictment, the sufficiency of the evidence, or the sufficiency of the jury instructions that could have been raised at any point over the last 30 years and has no place in this sort of collateral attack. The jury convicted Tipton of the VICAR counts and this Court affirmed. Assuming there was an error in not explicitly including a state or federal cross-reference, Tipton makes no argument that such an error prejudiced him. Omissions from an indictment or jury instruction are subject harmlessness review, *see Greer*, 141 S. Ct. 2090; *United States v. Cotton*, 535 U.S. 625 (2002); *United States v. Banks*, 29 F.4th 168 (4th Cir. 2022), and as to both the VICAR murder and VICAR maiming counts Tipton makes no attempt at demonstrating that the alleged defect had a "substantial and injurious effect or influence in determining the jury's verdict." *United States v.*

*Smith*, 723 F.3d 510, 512 (4th Cir. 2013) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)). Nor could any such claim of error satisfy § 2255(h)(2).[7]

### F. Tipton cannot demonstrate prejudice.

Even assuming the invalidity of one or more predicate offenses, Tipton still cannot demonstrate any prejudice. *See Green*, 67 F.4th at 668; *Said*, 26 F.4th at 660–66. To demonstrate prejudice under *Said*, Tipton "'must show not only that he *could* have been convicted under" the invalid predicate, "but also that he *was not* convicted under the" valid predicate. *Said*, 26 F.4th at 661 (citations omitted). Tipton has not even attempted to make this showing. *See* Def. Br. 42–46.

Instead, Tipton argues that "[t]he district court incorrectly dismissed [his] assertion that there is no evidence in the record that he used a firearm in the commission of his valid drug trafficking offenses[.]" (Def. Br. 42.) It is unclear to which "drug trafficking offenses" Tipton refers to as "valid." Nevertheless, whether Tipton refers to the Count 1 conspiracy or the CCE murders, his argument is both inapposite and wrong.

Count 1 specifically alleged that "it was [] part of the conspiracy to engage in

---

[7] Tipton also argues that § 1959(a)(2) "criminalizes acts of omission that require no physical force whatsoever" and that "Maiming is an assault, which itself does not require actual violent physical force." (Def. Br. 27 (citing *United States v. Royal*, 731 F.3d 333, 341 (4th Cir. 2013).) In *Rumley*, this Court rejected the argument that Virginia unlawful wounding could be committed through omissions. 952 F.3d at 548–551. Moreover, *Royal* did not hold that one could commit a *maiming* without using physical force.

a pattern of violent activity, including murder, assaults, and threats of violence to further the goals of the conspiracy. To that end, members of the conspiracy bought, possessed, and transferred firearms, which firearms were used in their violent activities." JA64. As overt acts in furtherance of Count 1, the indictment explicitly included the murders Dorothy Mae Armstrong, Bobby Long, Anthony Carter, Curtis Thorne, and Linwood Chiles. JA64–66. And the jury separately found Tipton guilty of those five murders through its verdict on other counts. Thus, Tipton's claim (Def. Br. 42) that "there is no evidence in the record that he used a firearm in the commission of his valid drug trafficking offenses" is baseless. The district court rejected Tipton's claim as "simply not true" (JA147 n.6), and other than restating the same unfounded claim, Tipton has made no effort on appeal to demonstrate error.

Tipton instead offers one final argument, which, again, is inapposite and irrelevant to *Said*'s prejudice inquiry. Tipton argues that "the evidence in the record does not demonstrate that [he] *himself* used a firearm in the commission of *any* of the 848(e) offenses offered as predicates for his 924(c) convictions." (Def. Br. 42.) This assertion, however, is immaterial under *Said*.

The indictment charged Tipton with aiding and abetting all the § 848(e)(1)(A) murders for which he was convicted. JA66–78. Likewise, the indictment charged Tipton with aiding and abetting both § 924(c) charges in Counts 20 and 26. JA76; JA79. Thus, it is irrelevant whether Tipton himself fired the fatal shots or instead

aided and abetted the same. "Aiding and abetting is not a standalone criminal offense," and thus "aiding and abetting a crime has the exact same elements as the principal offense." *Ali*, 991 F.3d at 574. For this reason, "it is impossible for the analysis of aiding and abetting a crime to come out differently than the principal crime." *Id*. "[A]iding and abetting a crime of violence is also categorically a crime of violence." *Id*. As *Said* explained, "it is of no moment whether the jury believed [Tipton] to have committed the[] [predicates] as a principal or as an aider and abettor." *Said*, 26 F.4th at 659 n.9.

Furthermore, Tipton's claim (Def. Br. 42) that there is no evidence "that [he] *himself* used a firearm in the commission of" the CCE Murders rests on a legally erroneous premise. As already explained, "§ 924(c) lacks any personal 'use of force' requirement[.]" *Stevens*, — F.4th —, 2023 WL 3940121, at \*7. Under § 924(c)(3)(A), the *offense* itself must involve force. But "[i]t doesn't require the defendant's use, attempted use, or threatened use of force." *Harrison*, 54 F.4th at 890.

\* \* \*

Both of Tipton's prejudice arguments miss the mark. As is evident, both arguments are legally baseless and neither actually contends with the governing inquiry under *Said*. Notwithstanding Tipton's failure to meaningfully contend with *Said*, the record in this case demonstrates that he does not come close to clearing its

standard.

Like the *Said* defendant, the jury convicted Tipton of every count underlying his convictions on Counts 20 and 26. And even assuming the invalidity of one or more crime-of-violence predicates, it is impossible that the jury did not find that Tipton used a firearm in furtherance of the undisputedly valid CCE murders charged under § 848(e). As noted above, § 848(e) is a valid drug-trafficking predicate and is enough to support the § 924(c) convictions charged in Count 20 and 26. So too regarding the VICAR murder predicates, which can just as equally support Tipton's convictions on Counts 20 and 26.

On direct appeal, this Court explained that the murders that formed the basis of the § 924(c) convictions were "all in relation to [the defendants'] drug-trafficking operation," and occurred "because their victims were suspected of treachery or other misfeasance, or because they were competitors in the drug trade, or because they had personally offended one of the 'partners.'" *Tipton*, 90 F.3d at 868. All of Tipton's § 924(c) convictions had drug-trafficking and murder predicates that controlling precedent establish are valid; the jury separately convicted Tipton of each of those predicate offenses, removing any doubt that the jury unanimously found each predicate proven; and each of those predicates was furthered through a firearm, given that the murders were all drug-related and accomplished with a gun.

Indeed, each murder for which Tipton was found guilty was committed to

45

advance the organization's drug trafficking. As this Court explained, "[t]he Government's evidence expressly linked each of the nine § 848(e) murders of which the appellants were severally convicted to a furtherance of the CCE's purposes: either silencing potential informants or witnesses, eliminating supposed drug trafficking rivals, or punishing underlings for various drug-trafficking misfeasances." *Tipton*, 90 F.3d at 887.

Tipton and his codefendants shot Dorothy Mae Armstrong to death on February 1, 1992, because she owed a drug debt. *Id*. at 869. After being threatened by Cory Johnson for not paying for a supply of crack, Armstrong went to live with her brother Bobby Long. *Id*. Cory Johnson eventually learned of Armstrong's whereabouts. Tipton and another individual then picked up Cory Johnson and Jerry Gaiters and drove them to a house to pick up a bag of guns. *Id*. After dropping off another individual Tipton drove Johnson and Gaiters to Bobby Long's house. *Id*. While Tipton waited in the car, Johnson and Gaiters approached the house and shot Armstrong and Long. *Id*. Johnson also killed Anthony Carter, another individual in the house, to prevent him from being a witness. PSR ¶ 88.

Linwood Chiles was murdered on February 19, 1992, because he was believed to be cooperating with police. *Id*. at 869. With Tipton standing by, Johnson ordered Chiles to put his head on a steering wheel and shot him to death. Curtis Thorne, who was shot to death with Chiles, owed a drug debt (PSR ¶ 93), and Priscilla and

Gwendolyn Greene were shot and permanently injured because they happened to be present in the car with Chiles and Thorne. The autopsy report indicated that Thorne was hit by bullets fired from two different directions. *Id*. at 869.

For the murders of Armstrong, Carter, and Long, this Court explained that Tipton "was instrumental in planning the murders and directly aided their execution by driving Cory Johnson, the designated executioner, to the scene, awaiting accomplishment of the deed in a getaway car, then driving the executioner from the scene." *Tipton*, 90 F.3d at 890. As to the later murders of Chiles and Thorne, Court noted that "Tipton and Johnson planned the executions of both victims for suspected treachery (Chiles) and thievery (Thorne) in relation to the drug-trafficking enterprise, and … Tipton was present at the scene as an active participant in seeing that the executions were carried out and that those responsible escaped detection." *Id*.

As is evident, each of Tipton's murders furthered the drug-trafficking organization. And each was carried out with a firearm. It is impossible that the jury convicted Tipton on Counts 20 and 26 without finding that he used a firearm in relation to those murders. A contrary conclusion would simply be inconsistent with the facts of this case and the jury's verdict.

No reasonable jury could have concluded that Tipton used a firearm in furtherance of the assumedly invalid predicate offenses, but not the still-valid CCE

47

murder predicates. *See Said*, 26 F.4th at 662–63. The same reasoning applies to the VICAR murder predicates, which can just as equally support Tipton's convictions on Counts 20 and 26. Under *Said*, it is irrelevant that the "record does not indicate which predicates the jury relied on[.]" *Id*. at 662. It is Tipton's burden to show that the jury relied *only* on the invalid predicates, and much like the *Said* defendant, "[t]his he cannot do." *Id*. Tipton has offered no reason to think "that the jury reached the commonsense-defying conclusion of relying only on those [invalid] predicates[.]" *Id*. Put differently, Tipton has not "pointed to any reason why the jury would not have convicted him on Counts [20 and 26] based on at least one of the valid predicates—let alone any evidence that they did not do so." *Id*. Indeed, "the fact that [Tipton] can point to nothing more than ambiguity is enough to resolve this case[.]" *Id*. at 662 n.15.

**Conclusion**

For the foregoing reasons, the Court should affirm the district court's denial of Tipton's § 2255 motion.

Respectfully submitted,

Jessica D. Aber
United States Attorney

_____/s/_____
Richard D. Cooke
Joseph Attias
Assistant United States Attorneys

## Statement Regarding Oral Argument

The United States respectfully suggests that oral argument is not necessary in this case. The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.

## Certificate of Compliance

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word 2016.

I further certify that this brief does not exceed 13,000 words (and is specifically 11,781 words) as counted by Microsoft Word, excluding the table of contents, table of authorities, statement regarding oral argument, this certificate, the certificate of service, and any addendum.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

/s/

Joseph Attias
Assistant United States Attorney
