**CASE NO. 22-5**

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

RICHARD TIPTON, II,

*Defendant - Appellant.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT RICHMOND

———————————

## REPLY BRIEF OF APPELLANT

———————————

John G. Baker
FEDERAL PUBLIC DEFENDER
FOR THE WESTERN DISTRICT
OF NORTH CAROLINA

Gerald W. King, Jr.
Chief, Capital Habeas Unit
For the Fourth Circuit
129 West Trade Street, Suite 300
Charlotte, NC 28202
704-374-0720
gerald_king@fd.org

Jeffrey L. Ertel
FEDERAL DEFENDER
PROGRAM, INC.
101 Marietta Street NW, Suite 1500
Atlanta, GA 30303
404-688-7530
jeff_ertel@fd.org

*Counsel for Appellant*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..............................................................................ii

I.    ARGUMENT ......................................................................................1

     A. Introduction ................................................................................1

     B. This Court has rejected the Government's defense of
        procedural default..................................................................... 3

     C. Mr. Tipton's Challenge to § 1959's Validity as a Crime of
        Violence Predicate is Properly Before this Court ........................... 4

     D. The Government Misinterprets and Amplifies *Said*'s
        Burden..................................................................................... 5

     E. Mr. Tipton's § 1959 Convictions Cannot Rest upon
        Uncharged "Generic" Offenses......................................................... 9

        1.  There was a paucity of trial evidence of Mr. Tipton
            using a firearm in the § 1959 offenses ....................................... 9

        2.  No statutes defining murder or maiming were
            provided to the jury .............................................................. 11

        3.  Even assuming the generic definitions of § 1959
            murder and maiming, § 1959(a) does not qualify as a
            crime of violence.................................................................14

        4.  Even assuming a state or federal statute, the inclusion
            of conspiracy disqualifies § 1959 as a crime of violence............16

II.   CONCLUSION ...............................................................................17

CERTIFICATE OF COMPLIANCE............................................................19

i

# TABLE OF AUTHORITIES

## Cases

*Borden v. United States,*
141 S. Ct. 1817 (2021) ........................................................ 1, 15

*Descamps v. United States,*
570 U.S. 254 (2013) ............................................................ 14

*In re Thomas,*
988 F.3d 783 (4th Cir. 2021) ............................................... 4

*Leocal v. Ashcroft,*
543 U.S. 1 (2004) ............................................................... 15

*Paul v. Superintendent,*
No. 2:13-cv-00304, 2022 WL 3043526 (S.D. Ind. Aug. 2, 2022) ...... 5, 12

*State v. Parlee,*
703 S.E.2d 866 (N.C. Ct. App. 2011) .................................... 16

*State v. Randolph,*
676 S.W.2d 943 (Tenn. 1984) ............................................. 16

*United States v. Ali,*
991 F.3d 561 (4th Cir. 2021) ............................................. 5, 8

*United States v. Davis,*
139 S. Ct. 2319 (2019) ......................................................... 1

*United States v. Jackson,*
32 F.4th 278 (4th Cir. 2022) ................................................ 4

*United States v. Manley,*
52 F.4th 143 (4th Cir. 2022) ............................................... 13

*United States v. Mathis,*
932 F.3d 242 (4th Cir. 2019) .............................................. 13

*United States v. Said,*
26 F.4th 653 (4th Cir. 2022) ....................................... *passim*

*United States v. Tipton,*
90 F.3d 861 (4th Cir. 1996) ........................................... 10, 11

ii

*Watson-Scott v. Commonwealth,*
   835 S.E.2d 902 (Va. 2019) ................................................................ 15

## Statutes

18 U.S.C. § 846 ............................................................................. 1
18 U.S.C. § 924 .................................................................... *passim*
18 U.S.C. § 1111 ............................................................................ 12
18 U.S.C. § 1959 .................................................................. *passim*
21 U.S.C. § 848 ...................................................................... 1, 7
28 U.S.C. § 2255 ................................................................. 1, 3, 4
Nev. Rev. Stat. § 453.333 ................................................................ 16

## Other Authorities

Merriam Webster Online Dictionary ........................................................ 9

Richard Tipton, III, by and through counsel, respectfully submits this reply in support of his appeal of the Eastern District of Virginia's denial of his successive Section 2255 motion challenging his convictions and sentences for the use of a firearm during a crime of violence or drug trafficking in violation of 18 U.S.C. § 924(c). That motion was authorized by this Court in light of *United States v. Davis*, 139 S. Ct. 2319 (2019), which invalidated "§ 924(c)'s residual clause," and following *Borden v. United States*, 141 S. Ct. 1817 (2021).

## I.    ARGUMENT

### A. Introduction

Mr. Tipton has challenged the validity of the underlying predicate offenses for his §924(c) convictions—under 18 U.S.C. § 1959(a), 21 U.S.C. § 848(e), and 18 U.S.C. § 846—as none qualify as a crimes of violence following the Supreme Court's invalidation of § 924(c)'s "residual clause." *Davis, supra*; *Borden, supra*. In urging this Court to affirm, the Government relies on a defense of procedural default already rejected by this Court's precedent (and its authorization of this challenge in the first place). The Government next exaggerates the standard for such challenges so that none could succeed, suggesting that Mr. Tipton cannot prevail unless he can prove that his jury relied solely upon an invalid predicate

1

offense when convicting him under § 924(c).  The Government quotes *Said* to assert that it is "commonsense-defying" to conclude that Mr. Tipton's jury relied "only on those [invalid] predicates[.]" Doc: 34 at 48 (quoting *Said*, 26 F.4th at 662–63).

This assertion ignores *Said*'s inapposite facts: namely, that each § 924(c) conviction had multiple predicates that stemmed from a single, specific event, ensuring that any invalid predicate was intertwined with a valid one; and that the jury received explicit instructions as to which offenses served as the predicates for each 924(c) conviction.

The thrust of Mr. Tipton's challenge, of course, is that it is simply impossible to discern the actual predicate(s) the jury relied upon for his § 924(c) convictions. The jury was presented with numerous alternate predicate offenses under three separate statutes, all of which occurred during a series of discrete events over a course of months. The jury was then improperly instructed on how to determine whether a predicate was proven and given no mandate or mechanism for recording which one it chose. And, to the extent that it is possible to discern which predicates the jury replied upon to convict Mr. Tipton under §924(c), the evidence presented at trial suggests that the jury would have relied on an invalid predicate. Given that, the Government's frequent invocation of "common

2

sense" as obviating the need for analysis of Mr. Tipton's claim reads as an evasion and a concession.

Mr. Tipton argues accordingly that there is "more than a reasonable possibility that the jury only found [Mr. Tipton] guilty" of his § 924(c) offenses based upon invalid predicates—which is this Court's actual standard, as articulated in *Said*, 26 F.4th at 662. Thus, any error was not harmless.

For the reasons stated herein and in Mr. Tipton's prior pleadings, this Court should vacate Mr. Tipton's § 924(c) convictions and remand for resentencing.

### B. This Court has rejected the Government's defense of procedural default.

The Government insists that Mr. Tipton's underlying claim is "procedurally defaulted" because he did not "challeng[e] his firearm convictions before they became final" upon the conclusion of his direct appeal. Doc. 34 at 16. The Government makes no mention of the statute that expressly permits this action, and which this Court has already applied in authorizing it: 28 U.S.C. § 2255(h). That provision permits a successor motion based on "a new rule of constitutional law...made retroactive to cases on collateral review...by the Supreme Court...that was

3

previously unavailable." *In re Thomas*, 988 F.3d 783, 790 (4th Cir. 2021). This Court has already held that: 1) *Davis* established such a rule; and 2) procedural default did not bar a successor motion based on *Davis* where the petitioner did not raise the issue on direct appeal. *See United States v. Jackson*, 32 F.4th 278, 283 n.3 (4th Cir. 2022). Moreover, this Court applied § 2255(h) in authorizing the successive habeas petition underlying this appeal. Order, *In re: Richard Tipton*, No. 20-10 (Doc. 42-1). The Government's procedural defense is simply untenable.

### C. Mr. Tipton's Challenge to § 1959's Validity as a Crime of Violence Predicate is Properly Before this Court.

The Government also suggests that Mr. Tipton's challenge to the validity of his § 1959 offenses as predicates for his § 924(c) convictions is somehow improper, asserting "a successive § 2255 raising a *Davis* challenge is not the avenue to seek relief for a freestanding claim of error in jury instructions or in the indictment." Doc: 34 at 35. Mr. Tipton's "objection," the Government writes, is "a challenge to the sufficiency of the indictment, the sufficiency of the evidence, or the sufficiency of the jury instructions that could have been raised at any point over the last 30 years and has no place in this sort of collateral attack." *Id.* at 41.

4

The Government mischaracterizes Mr. Tipton's challenge. The question of whether his § 1959 offenses constitute valid "crime of violence predicates" for his § 924(c) convictions after *Davis* and *Borden*—cases from 2019 and 2021, respectively—is not merely appropriate; it is the heart of the challenge. As this Court noted in *Said*, "the analysis required in this type of case is a case-specific and fact-intensive determination." *Said*, 26 F.4th at 662 (citing *Ali*, 991 F.3d at 575). Determining whether *Borden*'s *mens rea* requirement is satisfied necessitates this scrutiny of what the indictment and jury instructions commanded the jury to find. *See Paul v. Superintendent*, No. 2:13-cv-00304, 2022 WL 3043526, at *7 (S.D. Ind. Aug. 2, 2022) (underlying predicate could not satisfy *mens rea* per *Borden* because the "indictment and jury instructions did not reference—or include the elements of—any statutory offense as a predicate for his § 924(c) charge"). Mr. Tipton does not here challenge the sufficiency of the indictment, the evidence, or the instructions except as to that question.

### D. The Government Misinterprets and Amplifies *Said*'s Burden.

As noted *supra*, Mr. Tipton was convicted of multiple offenses that were cited in his indictment as predicates for his § 924 convictions. The Government argues that the existence of even one valid predicate ends the inquiry and precludes relief. This overstates *Said*. As discussed below, this

Court declined to impose an absolute bar to relief on that theory, recognizing that, in some cases, the jury's reliance on both valid and invalid predicates might not be harmless error. This is such a case.

The Government interprets this Court's decision in *Said* as foreclosing relief unless Mr. Tipton "show[s] that the jury would not have convicted him of the § 924(c) counts relying on the still valid" predicates. Doc: 34 at 3. That standard is insurmountable; it is also not this Court's. On the contrary, this Court expressly states that *Said* "d[id] not hold that a challenge such as Said's will *never* succeed when the defendant has been convicted of both a § 924(c) charge and a valid crime-of-violence predicate." *Said*, 26 F.4th at 664.

Indeed, *Said* holds only that "a defendant seeking to challenge a multi-predicate § 924(c) conviction on collateral review must show *more than a reasonable possibility* that the jury only found him guilty based on the invalid predicates." 26 F.4th 653, 662 (4th Cir. 2022). *Id.* at 664 (emphasis added). The petitioner in *Said* did not meet that burden. Nor could he, as his jury found him "guilty of several substantive crimes of violence" that all stemmed from a single event—an attack on a boat—for which there was strong "evidence…[of] the use of firearms[.]" *Id.* at 662. Moreover, for each of Said's 924(c) offenses, the trial court enumerated for the jury the specific counts of the indictment it would have to find unanimously for the offense to

6

have a predicate, even giving a limiting instruction as to one 924(c) offense. *Said*, 26 F.4th at 657 (quoting judge as instructing that "Count Ten is to be considered only if you have found [Said] guilty of at least one of the crimes of violence charged in Counts One, Two, Three, Five, Six, Seven, or Eight.")

Given those facts, *Said*'s petitioner could not "point[] to ways in which those individual charges could be split into valid and invalid predicates." See *id.* at 663. As this Court held, "common sense supports" that the jury "had at least one of those crimes in mind when they convicted him of" § 924(c) offenses "that occurred during the time period covering the attack" on the boat. *Id.* Given that intertwining and instruction, what other crimes could the jury have had in mind?

Not so here. The predicate offenses cited in Mr. Tipton's indictment are already "split"; they arose from different acts committed on different dates over many months.[1] While his § 848 and his §1959 VICAR murder offenses stem from the same deaths, there is no "overwhelming" record evidence or "strong proof" of his use of a firearm in those incidents; indeed, as discussed

---

[1]For the first, Count 20, the indictment cited: conspiracy, as charged in Count 1; the § 848(e) violations charged in Counts 17, 18, and 19; and the § 1959 violations charged in Counts 21, 22 and 23. JA76. For the second, Count 26, the indictment cited: conspiracy, again as charged in Count 1; § 848(e) violations as charged in Counts 24 and 25; § 1959 violations as charged in Counts 27 and 28; and the § 1959 maiming violations charged in Counts 29 and 30. JA79.

7

*infra*, the offenses that the jury was likeliest to choose as the § 924 predicates were the invalid VICAR maiming offenses.[2] Mr. Tipton's jury, unlike *Said*'s, was not reviewing only multiple, inseparable predicates stemming from the same event; they were, by definition, selecting from a menu and timeline of different acts. But when instructing Mr. Tipton's jury as to the § 924(c) offenses, the district court made no reference to these predicates. JA1525-1527. The district court instead read the text of § 924(c)(1) to the jury, including an almost verbatim recitation of its force and residual clauses. JA1525-1527. Nor did the district court identify certain counts as drug trafficking crimes, stating merely that each of "[t]he offenses alleged...are crimes of violence *or* drug trafficking crimes." JA1526. The district court repeatedly admonished the jury to refer to Mr. Tipton's verdict form to "assist" it in "giving individual consideration to each...count against him." JA1524-1526. But that form required no specific findings as to the predicate offenses or § 924(c) counts, directing the jury only to find Mr. Tipton "Guilty or Not Guilty" of each. JA85-90.

The Government quotes *Said* to assert that "[Tipton] can point to nothing more than ambiguity," which "is enough to resolve this case." Doc:

---

[2]*United States v. Ali*, 991 F.3d 561, 575 (2021).

8

34 at 48 (quoting *Said*, 26 F.4th at 662 n.15).  But "ambiguity" describes *Said*, where inseparable predicates could "be understood in two or more possible ways," valid or invalid.[3] Mr. Tipton does not point to ambiguity at all. Rather, he points to unknowability—that his jury might have selected an unambiguously invalid predicate, with perhaps the most likely candidate being the invalid § 1959 charges.  As discussed in the following section, because § 1959 is not a crime of violence, Mr. Tipton's 924(c) conviction cannot stand.

### E. Mr. Tipton's § 1959 Convictions Cannot Rest upon Uncharged "Generic" Offenses.

1. <u>There was a paucity of trial evidence of Mr. Tipton using a firearm in the § 1959 offenses.</u>

For the § 924(c) offense charged in Count 20, the § 1959 predicates were that Mr. Tipton and defendants Corey Johnson and Jerry Gaiters "did knowingly, intentionally, and unlawfully cause the" VICAR murders of Bobby Long, Anthony Carter, and Dorothy Mae Armstrong, Counts 21-23, JA76-78. As this Court summarized on appeal, however, the evidence at trial showed that Mr. Tipton "waited in the car" while Mr. Johnson, accompanied

---

[3]Merriam Webster Online Dictionary (available at https://www.merriam-webster.com/dictionary/ambiguity (last visited August 15, 2023).

by Mr. Gaiters went to the front door" of Mr. Long's house and, when Mr. Long opened the door, "opened fire, killing both Dorothy Armstrong and one Anthony Carter. Bobby Long fled out the front door, but was fatally shot by Cory Johnson in the front yard." *United States v. Tipton*, 90 F.3d 861, 869 (4th Cir. 1996). The Government emphasized in closing argument that "[t]here was one shooter in that house, according to ballistics. The Glock was used to kill all three of those people. Cory Johnson had the Glock that night." T.3010.

For the Section 924(c) offense charged in Count 26, the 1959 predicates were the VICAR murders of Curtis Thorne and Linwood Chiles and the VICAR maimings of Priscilla Green and Gwendolyn Green[4] attributed to Mr. Tipton and defendants Mr. Johnson and Lance Thomas. Counts 27-30, JA79-82. As this Court summarized on appeal, however, the murder charges stemmed from Mr. Johnson shooting Mr. Chiles inside the station wagon in which they, Mr. Thorne, and the Green sisters had been riding together, while Mr. Tipton, who had arrived in another vehicle, was "alongside the stationwagon....standing by." *Tipton*, 90 F.3d at 869. "Additional shots were fired," this Court found, "killing Thorne and

---

[4]The indictment spells Priscilla and Gwendolyn's last name as "Green"; this Court's opinion spells it as "Greene."

10

critically wounding both of the Greene sisters. The autopsy report indicated that Thorne had been hit by bullets fired from two different directions." *Id.* But the Government, while suggesting that Mr. Tipton had also participated in the shootings, insisted that Mr. Johnson's Glock was "the same Glock that ballistics have shown you unequivocally, unimpeachably, without a doubt, to be the gun that was used to kill Curt and Linwood[.]" JA1424. With the Government specifically attributing the fatal shootings of Mr. Chiles and Mr. Thorne to Mr. Johnson, there is "more than a reasonable possibility"[5] that the offenses used by the jury as predicate offenses for Mr. Tipton's § 924 convictions were the VICAR maimings of Priscilla and Gwendolyn Green—the only consequences of the "[a]dditional shots" not assigned to Mr. Johnson.

    2.  <u>No statutes defining murder or maiming were provided to the jury.</u>

As Mr. Tipton detailed in his opening brief, the murder and maiming charges brought under § 1959 lack any reference to a statute defining those offenses, which makes it *impossible* to determine under the categorical approach whether the most innocent conduct criminalized by his § 1959 convictions requires the *mens rea* necessary to satisfy § 924(c)'s surviving

---

[5] *Said*, 26 F.4th at 662.

elements clause. Doc. 21 at 24 (citing *Paul v. Superintendent*, No. 2:13-cv-00304, 2022 WL 3043526, at \*7 (S.D. Ind. Aug. 2, 2022) (underlying predicate could not satisfy *mens rea* per *Borden* because the "indictment and jury instructions did not reference—or include the elements of—any statutory offense as a predicate for his § 924(c) charge")).

The Government responds by asserting that "the elements of the generic federal offense or the state offense (or both working in combination) forming the entire VICAR offense may be used to show that a VICAR offense falls within § 924(c)(3)(A)." Doc: 34 at 35. While conceding that Mr. Tipton's "indictment did not explicitly cross-reference an underlying state or federal murder statute," the Government attempts to elide this deficiency by reciting the statutes that the indictment *could have* cross-referenced. *Id.* Noting that "this Court has held that VICAR murder premised on a violation of Virginia's first- and second-degree murder statute qualifies as a crime of violence, and that first-degree federal murder under § 1111(a), qualifies as well," *ibid*, the Government asserts that "[e]very possible standard that would support liability for a VICAR murder charge in Tipton's case satisfies § 924(c)(3)(A)." *Id.* at 14.

This might be true. But it ignores that neither of these "possible" standards was made available to Mr. Tipton's jury. The question of what the

12

indictment could have referenced to provide the jury with the necessary elements is irrelevant; what matters is that it referenced nothing. Which means that Mr. Tipton's jury was neither required nor able to find the elements that would establish whether his § 1959 convictions qualify as crimes of violence.

The Government's argument is also foreclosed by this Court's precedent, which holds that a § 1959(a) offense is not a valid predicate crime of violence unless the elements of the underlying state or federal offense satisfy § 924(c)'s force clause. *United States v. Mathis*, 932 F.3d 242, 265 (4th Cir. 2019); *United States v. Manley*, 52 F.4th 143, 148 (4th Cir. 2022). This Court has rejected the notion that it need "not consider the elements of the state statute" when determining whether a VICAR assault offense is a crime of violence because "element (4) of VICAR assault…requires that the assault be 'in violation of the laws of any State or the United States.'" *Id.* (quoting § 1959(a)).  That necessary determination could not be made here, as the jury was given no state or federal statute upon which the § 1959(a) offenses were predicated. Accordingly, the § 1959(a) predicates cannot qualify as crimes of violence under the categorical approach. The Government's foray into the record to identify some other jury finding that would provide the missing *mens rea* is both unauthorized and unavailing. In

13

the first place, the Government uses the *Shepard* documents to identify findings as to other charges that (it contends) correlate with the findings that would satisfy the generic murder and maiming statutes it proffers here. The Government ignores that this use of the modified categorical approach is allowed only when there is a statute to review—specifically, a divisible statute that sets out "one or more elements of the offense in the alternative." *Descamps v. United States*, 570 U.S. 254, 262 (2013). And there is no statute of any kind to review here.

Also unavailing is the Government's reliance upon the jury's findings during the sentencing proceeding to establish the elements found during its guilt-innocence deliberations. But an argument that depends upon findings made in a separate and later phase is incompatible with the scope of the *Shepard* documents[6], to say nothing of the space-time continuum.

3. <u>Even assuming the generic definitions of § 1959 murder and maiming, § 1959(a) does not qualify as a crime of violence</u>

The Government erroneously posits that § 1959 contains its own intent element that satisfies *Borden*. The Government points to § 1959's

---

[6]*Descamps*, 570 U.S. at 262 (modified categorical approach allows courts "to examine [only] a limited class of documents" when "determin[ing] which of a statute's alternative elements formed the basis of the defendant's prior conviction.")

14

requirement that the defendant commit the offense for the purpose of increasing or maintaining his position in a criminal enterprise. That requirement of purpose, the Government contends, is sufficient to satisfy *Borden*'s threshold *mens rea*. But *Borden* is not satisfied by intent that does not go to the use of physical force: One can intend to increase or maintain their position in a criminal enterprise without intentionally or knowingly using force. To satisfy *Borden*, the defendant must make "a deliberate choice of wreaking harm on another." *Borden*, 141 S. Ct at 1830.

For example, as in *Watson-Scott v. Commonwealth*, 835 S.E.2d 902, 904 (Va. 2019), a defendant who recklessly fired a gun down a street, killing someone, might have both carried and fired the gun in order to show off to other gang members. A defendant who drives a getaway car recklessly, killing someone, might have driven in such a manner to demonstrate standing up to authority. A defendant who drives while intoxicated, causing bodily harm, might have taken the wheel on a dare from another gang member. *See, e.g., Leocal v. Ashcroft*, 543 U.S. 1 (2004). While each of these defendants acted in order to gain or maintain status in a gang, none intended to use force or to target that force "against the person or property of another." *Borden*, 141 S. Ct. at 1826-27. They were simply reckless with the use of force.

15

Alternatively, a defendant who sells heroin as part of his duties to his gang knowing that the drug's supply chain is insecure from contamination with lethal substances such as fentanyl—making its sale extremely reckless—could be charged with aggravated assault and second-degree murder. Such "drug-induced homicides" are charged under both generic and specialized homicide statutes, the latter of which can require a *mens rea* of even less than extreme recklessness. *See, e.g., State v. Randolph*, 676 S.W.2d 943, 947-48 (Tenn. 1984) (sale of opiates can exhibit sufficient malice for second-degree murder); *State v. Parlee*, 703 S.E.2d 866, 869-70 (N.C. App. 2011) (same); Nevada Revised Statutes 453.333 (defendant is guilty of murder "[i]f the death of a person is proximately caused by a controlled substance which was sold, given, traded or otherwise made available to him or her by" the defendant).  None of these examples would satisfy *Borden*'s *mens rea*.

4. <u>Even assuming a state or federal statute, the inclusion of conspiracy disqualifies § 1959 as a crime of violence.</u>

The Government also attempts to elide the instructions that authorized Mr. Tipton's jurors to convict him of his § 1959 offenses if they found that he had conspired to commit any of the multiple offenses listed in the statute. The Government concedes that conspiracy to commit murder or maiming is not a crime of violence; it insists, however, that Mr. Tipton's convictions were

16

not predicated on conspiracy, but on the substantive offenses detailed in the statute. The record does not support that contention. As detailed in his brief, the trial court further instructed the jury that it needed to find only two elements to convict Mr. Tipton of conspiracy. First, "that two or more persons in some way or manner, positively or tacitly, came to a mutual understanding to try to accomplish a common and unlawful plan as charged in the indictment." JA1516. Second, "that the defendant knowingly and willfully became a member of such a conspiracy." JA1516. A nearly boundless spectrum of conduct and culpability could satisfy elements as vague and broad as these. It is thus impossible to know whether Mr. Tipton's jury found him guilty of § 924(c) based upon a crime itself or upon the conspiracy to commit it—or, for that matter, the precise degree of responsibility the jury ultimately assigned to him.

## II.   CONCLUSION

For the reasons stated above and in his initial brief, Mr. Tipton urges this Court to reverse the district court's denial of his successive 2255 motion and vacate his § 924(c) convictions and sentences.

17

This, the 15th day of August, 2023.

John G. Baker
Federal Public Defender for the
Western District of North Carolina

*/s/ Gerald W. King, Jr*
Gerald W. King, Jr.
Chief, Capital Habeas Unit
for the Fourth Circuit
129 West Trade Street, Suite 300
Charlotte, North Carolina 28202
Tel: (704) 374-0720
Direct: (704) 688-6946
E-mail: gerald_king@fd.org

Jeffrey Lyn Ertel
The Mendelsohn Ertel Law Group LLC
101 Marietta St NW #3325
Atlanta, Georgia 30303
Phone: (404) 885-8878
Email: jeff@tmelg.com

Counsel for Richard Tipton, III.

## CERTIFICATE OF COMPLIANCE

1.   The foregoing brief has been prepared in a proportionally spaced typeface using Microsoft Word, Georgia, 14 point.

2.   Exclusive of the table of contents; table of citations; and the certificate of compliance, the foregoing brief contains 3,783 words.

3.   I understand that a material misrepresentation can result in the Court striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief with the word or line printout.

> */s/ Gerald W. King, Jr*
> Gerald W. King, Jr.